COUNTY OF MERRIMACK v. KIMBALL, *Guardian.*

A county which has paid for the support of an insane person, committed to the asylum by the judge of probate, cannot recover the money so paid of such person's guardian.

ASSUMPSIT, to recover money paid for board of Woodward at the asylum for the insane.    Upon the petition of Woodward's wife, the court of probate for this county ordered an inquisition, and upon the return thereof decreed him to be an insane person, committed him to the asylum, and appointed the defendant his guardian.    Woodward has a wife and children, and property in the

hands of the defendant, as guardian, valued at about three thousand dollars.

*E. G. Leach*, solicitor, for the plaintiff. The statute provides that the county paying the expense of any inmate of the asylum shall be entitled to recover the amount so paid of any town, county, or individual by law liable for the support of such inmate. G. L., c. 10, s. 21. The only question seems to be, whether this individual, or his estate, is liable for his support.

It is a fundamental principle of society, that it is every man's legal duty to support himself, if of sufficient ability to do so, and it seems unnecessary to cite authorities to that effect. If this is not true, then no one is bound to support himself, no matter what his property may be, and every man can claim to be supported by the public. If each citizen has this right, and should claim it, he could secure it in no other way than by doing enough to support himself, or one other individual.

If he is relieved of the legal duty of supporting himself from lack of sufficient ability, he must be a pauper. This unfortunate class alone can escape the legal duty of supporting themselves.

No man is considered a pauper who has credit or property with which he can, under the circumstances in which he is placed, *immediately* relieve his wants if he will. *Poplin* v. *Hawke*, 8 N. H. 307; *Moultonborough* v. *Tuftonborough*, 43 N. H. 316.

The fact that Woodward has a wife and children makes no difference here. They may be more than self-supporting, or have ample property of their own. The fact that he was committed by the judge of probate on petition of his wife cannot affect his liability to support himself. The order of the court is conclusive as to the necessity of it. *Merrimack County* v. *Concord*, 39 N. H. 216.

The object of making the county liable, in the first instance, was doubtless to provide a sure source of pay to the asylum, so that there should be no delay in securing this unfortunate class every advantage the state can afford, alike to the poor and to the rich.

The fact that it is necessary for the safety of the state, or of the individual, that he should be confined in the asylum, creates no obligation on the state to support him, if he have sufficient property to support himself; otherwise the state may be obliged to support every insane person without regard to his wealth.

*Chase & Streeter*, for the defendant.

CARPENTER, J. Under the act of Dec. 16, 1828 (Laws 1830, *p.* 305), which provided that a town might recover all sums expended in the support of a poor person " of the town, or person chargeable by law with the maintenance of such poor person," it was held that no action would lie in favor of the town against the person relieved. *Charlestown* v. *Hubbard*, 9 N. H. 195, decided

in 1838.  The earliest legislation on the subject of commitments to the asylum for the insane is found in the Revised Statutes, which went into effect in 1843.  By section 15 of chapter 10 it was provided that " any insane person committed to the asylum by any court or judge of probate shall be supported by the county from which he was committed, and any sum so paid may be recovered by the county, of any county, town, or person chargeable with his support."  It must be presumed that the legislature employed the expression " person chargeable with his support" in the same sense as the nearly identical language in the statute relating to paupers.  Rev. Stat., *c.* 66, *s.* 9.  When the intention was to subject the person committed to the expense of his support, different and explicit words were used.  By section 21, chapter 225, it was provided that persons prosecuted for crime might in certain cases be committed to the asylum ; and by section 22, that " every person so committed shall be kept at his own expense, if he has estate sufficient for that purpose."  No material alteration of the statute has been made in respect to commitments by the judge of probate.  G. L., *c.* 10, *ss.* 16 and 21.

A guardian is under no personal obligation to maintain his ward. He is not chargeable with the ward's support within the meaning of the statute, which contemplates a personal liability either at common law, or by force of the statute.  G. L., *c.* 82, *s.* 8 ; Rev. Stat., *c.* 66, *s.* 8 ; Act of Dec. 16, 1828, *s.* 10.

It is not contended that a person committed to the asylum is liable at common law for his support therein.  *Abbot* v. *Fremont,* 34 N. H. 432, 436 ; *Farmington* v. *Jones,* 36 N. H. 271 ; *Bennington* v. *McGennes,* 1 D. Chip. 44 ; *Deer-Isle* v. *Eaton,* 12 Mass. 328 ; *Medford* v. *Learned,* 16 Mass. 215 ; *Groveland* v. *Medford,* 1 Allen 24, 25 ; *Stow* v. *Sawyer,* 3 Allen 515.

*Judgment for the defendant.*

STANLEY, J., did not sit : the others concurred.